COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Annunziata
Argued at Alexandria, Virginia


JORGE ROBERTO AGUILAR

MEMORANDUM OPINION[*] BY
v.    Record No. 2375-98-4          JUDGE JAMES W. BENTON, JR.
                                         DECEMBER 28, 1999
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

John C. Kiyonaga (Kiyonaga & Kiyonaga, on
briefs), for appellant.

Michael T. Judge, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


The trial judge convicted Jorge Roberto Aguilar of two counts

of malicious wounding by mob in violation of Code § 18.2-41.

Aguilar contends that the judge erred (1) in admitting as evidence

the statement of a non-testifying codefendant and (2) in allowing

a witness to testify from an unauthenticated document created by

another person.  For the reasons that follow, we reverse the

convictions and remand for a new trial.

I.

The Commonwealth's evidence proved that Jorge Roberto

Aguilar, who is associated with a street gang, and several members

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

of that street gang fought Selden Najera and Alfie Bacchus, who are associated with an opposing street gang. During the fight, someone stabbed Najera and Bacchus with a knife. Through the testimony of several associates of Najera's gang, the Commonwealth proved that Aguilar stabbed Najera and Bacchus.

During the Commonwealth's case-in-chief, a detective testified and related the details of a statement made by a non-testifying codefendant, Robin Meadows, implicating Aguilar in the stabbing incident. The trial judge overruled Aguilar's objection that the testimony was in violation of his right to confront the witness. According to Meadows' statement, she transported Aguilar and other gang members to the restaurant to fight the other gang in retaliation for damage done to her apartment. In her statement, she said Aguilar had a knife in her car that was involved in the fight.

II.

On brief, the Commonwealth concedes that "the United States Supreme Court has . . . ruled the hearsay exception upon which the trial [judge] admitted the statements violates the confrontation clause" of the constitution. See Lilly v. Virginia, 119 S. Ct. 1887 (1999). The Commonwealth contends, however, that the error was harmless. We conclude that it was not.

Confrontation Clause error is a constitutional error that is subject to harmless error analysis. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). Constitutional error is harmless,

-

however, only if "the beneficiary of the constitutional error . . . prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967). As the Supreme Court has stated, "the correct inquiry is whether, assuming that the damaging potential of the [evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Van Arsdall, 475 U.S. at 684; see also Olden v. Kentucky, 488 U.S. 227, 232 (1988).

"[A] harmless error analysis . . . [is not] simply a sufficiency of the evidence analysis." Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992). Even if "the other evidence amply supports the . . . verdicts, [error is not harmless when] the disputed testimony may well have affected the . . . decision." Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). Indeed, an "emphasis and perhaps overemphasis, upon the [concept] of 'overwhelming evidence,'" has the effect of clouding the relevant question "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Chapman, 386 U.S. at 23 (footnote and citations omitted). Applying this standard, we hold that the error was not harmless.

The evidence proved that the fight was between members and associates of rival gangs. The evidence also proved that other persons in the fight may have also been armed with another knife

-

or screwdriver.  Neither Bacchus nor Najera saw the person who stabbed them.

Three of the Commonwealth's witnesses were associates of the gang hostile to the gang with which Aguilar was affiliated.  The other eyewitness who testified for the Commonwealth denied being a member of the gang; however, she admitted that before the fight she was with Najera and Bacchus.  She believed Aguilar was named "Jose Damingas" and testified that Damingas "had a problem . . . with [her] other friend."  Thus, all of the eyewitnesses who said Aguilar had a knife during the fight had a gang connection or bias that rendered them antagonistic to Aguilar.

Aguilar testified that he did not have a knife during the fight, and, thus, contradicted the testimony of the opposing gang members.  The evidence also proved that Aguilar previously had given a statement to the police denying he had a knife during the fight.

By proving Meadows' statement that Aguilar had a knife, the prosecutor provided evidence that enhanced the credibility of the opposing gang members.  At the time of the event, Meadows was affiliated with the same gang members as Aguilar.  Her statement had the tendency to add force to the Commonwealth's case because she was a witness who had no apparent hostility toward Aguilar.

"[A]ssuming that the damaging potential of [Meadows' statement was] realized," Van Arsdall, 475 U.S. at 684, it was significant because the statement provided a version of the

-

critical event consistent with the testimony of opposing gang members whose credibility might otherwise be questioned. Given the degree of antagonism between the Commonwealth's witnesses and Aguilar, we cannot conclude beyond a reasonable doubt that Meadows' statement did not sway the trier of fact in giving added credence to the Commonwealth's witnesses. Because the disputed evidence may have affected the verdict, we hold that the evidence was not harmless.

III.

Aguilar also contends that the detective testified from another officer's notes as to matters the detective did not remember. The Commonwealth counters that the objection which was made at the conclusion of the detective's testimony came too late. Because we conclude that this matter, if it arises again, will not occur in the same context, we do not address the claim.

For the reason stated above, we hold that a violation of the confrontation clause occurred and that the error was not harmless. Accordingly, we reverse the convictions and remand for a new trial.

Reversed and remanded.

-